SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER—
COMMERCIAL DIVISION

---------------------------------------------------------------x

ZHI QIANG LI,
BAOZHONG YANG, and
WEI LI,
*on their own behalf and on behalf of others similarly
situated,*

                                        Plaintiffs,

                    v.

HAIKU BISTRO 149, INC
    d/b/a Haiku Asian Bistro White Plains
HAIKU @ WP INC.
    d/b/a Haiku Asian Bistro
    d/b/a Haiku Asian Bistro White Plains
    d/b/a Haiku Asian Bistro & Sushi Bar (White Plains)
JP WHITE PLAINS INC
    d/b/a Haiku Asian Bistro White Plains
SOONWAH LEE
    a/k/a Michael Lee

                                        Defendants.

---------------------------------------------------------------x

Case No.

**CPLR 901 Class Action**

**AMENDED
COMPLAINT**

**JURY DEMAND**

Plaintiffs ZHI QIANG LI, BAOZHONG YANG and WEI LI (Collectively referred to as

Plaintiffs), by and through their attorney, Troy Law, PLLC, hereby brings this complaint against

Defendants HAIKU BISTRO 149 INC d/b/a Haiku Asian Bistro White Plains; HAIKU @ WP

INC d/b/a Haiku Asian Bistro d/b/a Haiku Asian White Plains d/b/a Haiku Asian Bistro & Sushi

Bar (White Plains); JP WHITE PLAINS INC d/b/a Haiku Asian Bistro White Plains; (Collectively

reffered to as "Corporate Defendnats"); and SOONWAH LEE a/k/a Michael Lee (Collectively

with Corporate Defendants referred to as "Defendants"), and alleges as follows:

## **INTRODUCTION**

1.      Plaintiffs allege, pursuant to N.Y. Lab. Law §§ 198(1-a), 198(1-d) and 663(1), that

Defendants in bad faith violated the Minimum Wage Act and Wage Theft Prevention Act, N.Y.

Lab. Law §§ 191, 195(3); N.Y. Lab. Law § 650 *et seq.*, and the Hospitality Industry Wage Order

promulgated pursuant thereto, 12 N.Y.C.R.R. § 146 (the "Wage Order"), and that Defendants are therefore liable to Plaintiff for unpaid or underpaid overtime compensation, liquidated damages, statutory damages, prejudgment interest, post-judgment interest, attorney fees, costs, expenses, injunctive relief, and such other and further relief made available by law.

2.    This action is brought by the Plaintiffs ZHI QIANG LI, BAOZHONG YANG, and WEI LI against the Defendants for alleged violations of the New York Labor Law ("NYLL"), arising from Defendants' various willful and unlawful employment policies, patterns and practices.

3.    Upon information and belief, Defendants have willfully and intentionally committed widespread violations of the NYLL by engaging in pattern and practice of failing to pay its employees, including Plaintiff, minimum wage for each hour worked and overtime compensation for all hours worked over forty (40) each workweek.

4.    Plaintiffs allege pursuant to NYLL §§ 650 *et seq.* and the Wage Order that he is entitled to recover from the Defendants: (1) unpaid wage and minimum wage compensation, (2) unpaid overtime compensation, (3) unpaid spread-of-hours premium, (4) unpaid meal deduction, (5) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday, (6) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that accurately and truthfully lists employee's hours along with the employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day, (7) liquidated damages equal to the sum of unpaid minimum wage, unpaid "spread of hours" premium, unpaid overtime in the amount of twenty five percent under NYLL § 190 et seq., § 650 et seq., and one hundred percent after April 9, 2011 under NY Wage Theft Prevention Act, (8) 9%

simple prejudgment interest provided by NYLL, (9) transportation costs, (10) unreimbursed mile-age for out of pocket delivery costs, tolls and gas (11) post-judgment interest, and (12) attorney's fees and costs.

## JURISDICTION AND VENUE

5.      Jurisdiction is proper in this court because Corporate Defendants are residents of the State of New York, Westchester County.

6.      Venue is proper in this court pursuant to CPLR § 503, because Plaintiff is a resident of Defendants conduct business in the State of New York, County of Westchester.

## PLAINTIFFS

7.      Plaintiff Zhi Qiang Li was employed by Defendants from on or about September 2, 2019 to September 8, 2019 to work as a delivery person at Corporate Defendants restaurant located at 149 Mamaroneck Avenue, White Plains, NY 10601.

8.      Plaintiff Baozhong Yang was employed by Defendants from on or about May 30, 2016, to June 25, 2021, to work as a delivery person at Corporate Defendants restaurant located at 149 Mamaroneck Avenue, White Plains, NY 10601.

9.      Plaintiff Wei Li was employed by Defendants from on or about September 6, 2016, to November 20, 2016, to work as a delivery person at Corporate Defendant restaurant located at 149 Mamaroneck Avenue, White Plains, NY 10601.

## DEFENDANTS

*Corporate Defendants*

10.     Defendant HAIKU BISTRO 149 INC d/b/a Haiku Asian Bistro White Plains is a domestic business corporation organized under the laws of the State of New York with a principal and registered address at 149 Mamaroneck Avenue, White Plains, NY 10601.

11.     Defendant HAIKU @ WP INC d/b/a Haiku Asian Bistro d/b/a Haiku Asian Bistro White Plains d/b/a Haiku Asian Bistro & Sushi Bar (White Plains) is domestic business corporation organized under the laws of the state of New York with a principal and registered address at 149 Mamaroneck Avenue, White Plains, NY 10601.

12.     Defendant JP WHITE PLAINS INC d/b/a Haiku Asian Bistro White Plains is a domestic business corporation organized under the laws of the state of New York with a prin-cipal address at 149 Mamaroneck Avenue, White Plains, NY 10601, and a registered address at 15 Park Place, Bronxville, NY 10708.

*Owner/Operator Defendants*

13.     SOONWAH LEE a/k/a Michael Lee known as the "Boss" to plaintiff, and the owner of Corporate Defendants, (1) had the power to hire and fore employees, (2) supervised and controlled employee work schedules and conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at Corporate Defendants.

14.     SOONWAH LEE a/k/a Michael Lee supervised the plaintiffs on a day-to-day basis.

15.     SOONWAH LEE a/k/a Michael Lee acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally lia-ble with Corporate Defendants.

## **STATEMENT OF FACTS**

### **Corporate Defendants Constitute an Enterprise**

16.     Upon information and belief, Corporate Defendants are joint employers of Plaintiff and constitute an enterprise as the term is defined by 29 USC §203(r) insofar as they share staff, including Plaintiff, pay Plaintiff for the work performed at the enterprise no matter what location they worked; operated at the same location during overlapping time periods, advertise the Corporate Defendants as an enterprise, and are otherwise engaged in related activities performed through unified operation and/or common control for a common business purpose, including sharing a common website and logos, and are co-owned by the same partners (Defendant SOONWAH LEE a/k/a Michael Lee and non-defendants Pietro Diana a/k/a Peter Diana and Hsingya Chang a/k/a John Chang)

17.     At all relevant times, the work performed by plaintiffs were directly essential to the business operated by Corporate Defendants

### **Wage and Hour Claims**

18.     There are at least 100 employees at the restaurant, including non-tipped employees and tipped employees

19.     Defendants committed the following alleged acts knowingly, intentionally and willfully against the Plaintiff, the CPLR § 904 Class.

20.     Pursuant to Section 146-2.2 of the Wage Order, an employer cannot take credit towards the basic minimum wage if a service employee or food service worker has not received written notification of the tip credit.

21.     At all relevant times, Defendants knowingly and willfully failed to pay Plaintiff and similarly situated employees at least the New York minimum wage for each hour worked.

22.    At all relevant times, Defendants knowingly and willfully failed to pay Plaintiff his lawful overtime compensation of one and one-half times (1.5x) their regular rate of pay for all hours worked over forty (40) in a given workweek.

23.    While employed by Defendants, Plaintiff was not exempt under federal and state laws requiring employers to pay employees overtime.

24.    Defendants failed to keep full and accurate records of Plaintiff's hours and wages.

25.    Upon information and belief, Defendants failed to keep full and accurate records in order to mitigate liability for their wage violations. Defendants never furnished any notice of their use of tip credit.

26.    At all relevant times, Defendants knowingly and willfully failed to provide Plaintiff and similarly situated employees with Time of Hire Notice reflecting true rates of pay and payday as well as paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day.

27.    Defendants knew that the nonpayment of overtime pay and New York's "spread of hours" premium for every day in which Plaintiff worked over ten (10) hours would financially injure Plaintiff and similarly situated employees and violate state and federal laws.

28.    At all times during plaintiff's employment, defendants practiced a policy of 'time shaving' and as a result plaintiffs were paid less than the hours they actually worked with defendants.

29.     Defendants did not post the required New York State Department of Labor posters regarding minimum wage pay rates, overtime pay, tip credit, and pay day.

**Plaintiff Zhi Qiang Li**

30.     From on or about September 2, 2019 to September 8, 2019, plaintiff Zhi Qiang Li was employed by Defendants to work as a delivery man at Corporate Defendants located at 149 Mamaroneck Avenue, White Plains, NY 10601.

31.     For the month that plaintiff Zhi Qiang Li was employed by defendants his schedule ran as follows, from 11:30 to 22:30, with a break between 15:30 to 17:00 for nine and a half (9.5) hours per day for three (3) days per week; 11:30 to 22:30 for a total of eleven (11) hours per day for two (2) days per week; and 16:30 to 22:30 for six (6) hours per day for one (1) day per week for a total of fifty-six and a half (56.5) hours per week.

32.     In addition to having the work schedule above, plaintiff Zhi Qiang Li two (2) days during the week had to drive all the employees to and from the restaurant to the drop-off point and this took an additional two (2) hours each day that he drove. With this, plaintiff Baozhong Yang worked on average for sixty and a half (60.5) hours per week.

33.     At all relevant times, plaintiff Zhi Qiang Li did not have a fixed time for lunch or for dinner.

34.     Instead, he was always on call, meaning that if a customer's order came, his break stopped and he had to deliver the order.

35.     At all relevant times, on the five (5) "full" workdays when Zhi Qiang Li was required to work through the breaks, he would have around forty (40) minutes of "break" deducted from his actual hours worked automatically.

36.     Ay all relevant times on the "half" days, plaintiff Zhi Qiang LI would have twenty (20) minutes of "break" deducted from his actual hours worked automatically.

37.     For the month in 2019 that plaintiff Zhi Qiang Li was paid ten dollars ($10.00) per hour.

38.     At all relevant times, plaintiff Zhi Qiang Li was not paid overtime pay for all the weeks that he worked over forty (40) hours in that week.

39.     Throughout his employment, plaintiff Zhi Qiang Li was no compensated at least at one and one half his proposed hourly rate for all hours worked above forty (40) hours in each workweek.

40.     Throughout his employment, plaintiff Zhi Qiang Li was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at his promised rate.

41.     At all relevant times, plaintiff Zhi Qiang Li was never informed of his hourly pay rate or any tip deductions towards the minimum wage.

42.     Further, at all relevant times, plaintiff Zhi Qiang Li had to prepare the card-board and do the sauces for delivery.

43.     At all relevant times, plaintiff Zhi Qiang Li's non-tipped work exceeded two (2) hours per day or more than twenty (20%) of plaintiff's workday.

44.     Additionally, defendants deducted around ten dollars ($10) per week in cash tips, around twenty ($20) a week in meal credit, and around twenty ($20) a week for transportation.

45.    This included plaintiffs service as the restaurant's transportation van driver, for which plaintiff was compensated five dollars ($5) only for forty to sixty minutes of non-tipped work.

46.    Plaintiff Zhi Qiang Li's meal did not include any "tea, coffee, milk, or juice" as required by Section 146-3.7 of the Wage Order. Specifically, the restaurant provided hot water in a teapot, but no tea and they were not allowed free drinks at the defendant's restaurant.

47.    Furthermore, on days when plaintiff did not take the meal, did not have time to take a meal, or took the meal but did not finish due to plaintiff needing to complete a delivery, the meal deduction was still taken from plaintiffs pay.

48.    Throughout his employment, plaintiff Zhi Qiang Li was not given a statement with his weekly payment reflecting employee's name, employer's name, employer's address and telephone number, employee's wages, any allowance claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in Chinese, plaintiff's native language.

49.    Plaintiff Zhi Qiang Li also never received notice nore agreed to the illegal tip, transportation and meal deductions.

50.    As a part of plaintiff's employment with Defendants, plaintiff Zhi Qiang Li was required to bear the costs of the purchase of a motor vehicle for his deliveries.

51.    As a part of Plaintiff's employment with Defendants, plaintiff Zhi Qiang Li was required to bear the cost of the purchase of the motor vehicle and the cost to keep the vehicle maintained.

52.     In delivering food to Defendants' customers, plaintiff Zhi Qiang Li drove around a hundred (100) miles per day, with about twenty-five (25) orders per day.

53.     On average, plaintiff Zhi Qiang Li drove between two (2) to three (3) miles one way per order.

54.     Plaintiff Zhi Qiang Li was not reimbursed by Defendants for the cost of the delivery vehicle or the maintenance of the delivery vehicle for Defendants' benefit.

### Plaintiff Baozhong Yang

55.     From on or about May 30, 2016, to June 25, 2021, plaintiff Baozhong Yang was employed by Defendants to work as a delivery man at Corporate Defendants located at 149 Mamaroneck Avenue, White Plains, NY 10601.

56.     Plaintiff Baozhong Yang did not work between June 28, 2017 to August 01, 2017, due to him going back to China during that period

57.     From on or about May 30, 2016 to June 28, 2017, plaintiff Baozhong Yang's regular work schedule ran from 11:30 to 22:30, with a break between 15:30 to 17:00 for nine and a half (9.5) hours per day for three (3) days per week; 11:30 to 22:30 for a total of eleven (11) hours per day for two (2) days per week; and 16:30 to 22:30 for six (6) hours per day for one (1) day per week for a total of fifty-six and a half (56.5) hours per week.

58.     In addition to having the work schedule above, plaintiff Baozhong Yang two (2) days during the week had to drive all the employees to and from the restaurant to the drop-off point and this took an additional two (2) hours each day that he drove. With this, plaintiff Baozhong Yang worked on average for sixty and a half (60.5) hours per week.

59.     From on or about August 01, 2017 to June 25, 2021, plaintiff Baozhong Yang's regular work schedule ran from 11:30 to 22:30, with a break between 15:30 to 17:00

for nine and a half (9.5) hours per day for three (3) days per week; 11:30 to 22:30 for a total of eleven (11) hours per day for two (2) days per week; and 16:30 to 22:30 for six (6) hours per day for one (1) day per week for a total of fifty-six and a half (56.5) hours per week.

60.     In addition to having the work schedule above, plaintiff Baozhong Yang two (2) days during the week had to drive all the employees to and from the restaurant to the drop-off point and this took an additional two (2) hours each day that he drove. With this, plaintiff Baozhong Yang worked on average for sixty and a half (60.5) hours per week

61.     At all relevant times, plaintiff Baozhong Yang did not have a fixed time for lunch or for dinner for days when he was required to work through his "break time".

62.     Instead he was always on call, meaning that if a customers order came, his break stopped and he had to deliver the order.

63.     At all relevant times, on the five (5) "full" workdays when plaintiff Baozhong Yang was required to work through his breaks, he would have around forty (40) minutes of "break" deducted from his actual hours worked automatically.

64.     On the "half" days that he worked plaintiff Baozheng Yang would have twenty (20) minutes of "break" deducted from his actual hours worked automatically.

65.     From on or about May 30, 2016, to June 28, 2017, plaintiff Baozhong Yang was paid a flat compensation of seven dollars and fifty cents ($7.50) per hour.

66.     From on or about August 1, 2017, to June 25, 2021, plaintiff Baozhong Yang was paid a flat compensation of nine dollars and fifteen cents ($9.15) per hour.

67.     At all relevant times, plaintiff Baozhong Yang was not paid overtime pay for all the weeks that he worked over forty (40) hours in that week.

68.     Throughout his employment, plaintiff Baozhong Yang was no compensated at least at one and one half his proposed hourly rate for all hours worked above forty (40) hours in each workweek

69.     Throughout his employment, plaintiff Baozhong Yang was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at his promised rate.

70.     At all relevant times, plaintiff Baozhong Yang was never informed of his hourly pay rate or any tip deductions towards the minimum wage.

71.     Further, at all relevant times, plaintiff Baozhong Yang had to cut the cardboard and prepare the sauces.

72.     At all relevant times, plaintiff Baozhong Yang's non-tipped work exceeded two (2) hours per day or more than twenty (20%) of plaintiff's workday.

73.     Additionally, defendants deducted around twenty ($20) per week in meal credit and around twenty ($20) per week for transportation.

74.     This included plaintiffs service as the restaurant's transportation van driver, for which he was compensated five dollars ($5) for the time that he drove the other worker that amounted to non-tipped work.

75.     Plaintiff Baozhong Yang meal did not include any "tea, coffee, milk, or juice" as required by Section 146-3.7 of the Wage Order. Specifically, the restaurant provided hot water in a teapot, but no tea and employees were not allowed any drinks for free.

76.     Furthermore, on the days that plaintiff did not take a meal, did not have time to take a meal or took a meal and was not able to finish as a result of him having to complete an order during his break, the meal deduction was still taken from his pay.

77.    Throughout his employment, plaintiff Baozhong Yang was not given a statement with his weekly payment reflecting employee's name, employer's name, employer's address and telephone number, employee's wages, any allowance claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in Chinese, plaintiff's native language.

78.    Plaintiff Baozhong Yang also never received notice nor agreed to the illegal tip, transportation and meal deductions.

79.    As a part of plaintiff's employment with Defendants, plaintiff Baozhong Yang was required to bear the costs of the purchase of a motor vehicle.

80.    As a part of Plaintiff's employment with Defendants, plaintiff Baozhong Yang was required to bear the cost of the purchase of an electric bike and the electric batteries that come with it.

81.    In delivering food to Defendants' customers, plaintiff Baozhong Yang drove around a hundred (100) miles per day.

82.    On average, plaintiff Baozhong Yang drove and two to three miles one way per order, and delivered around twenty-five(25) orders per day.

83.    Plaintiff Baozhong Yang was not reimbursed by Defendants for the cost of the delivery vehicle or the maintenance of the delivery vehicle for Defendants' benefit.

### *Plaintiff Wei Li*

84.    From on or about September 6, 2016, to November 20, 2016, plaintiff Wei Li was employed by Defendants to work as a delivery man at Corporate Defendants located at 149 Mamaroneck Avenue, White Plains, NY 10601.

85.    From on or about September 6, 2016, to November 20, 2016, plaintiff Wei Li's regular work schedule ran from 11:30 to 22:30, with a break between 15:30 to 17:00 for nine and a half (9.5) hours per day for three (3) days per week; 11:30 to 22:30 for a total of eleven (11) hours per day for two (2) days per week; and 16:30 to 22:30 for six (6) hours per day for one (1) day per week for a total of fifty-six and a half (56.5) hours per week.

86.    At all relevant times, plaintiff Wei Li did not have a fixed time for lunch or for dinner for days when he was required to work though the "break" time.

87.    Instead, he was on call, meaning that if a customer's order came, his break stopped and he had to deliver the order.

88.    At all relevant times, on the five (5) "full" workdays when plaintiff Wei Li was required to work though his break, he would have around forty (40) minutes of "break" deducted from his actual hours automatically.

89.    On the "half" days that plaintiff Wei Li was required to work though his break, he would have twenty (20) minutes of "break" deducted from his actual hours automatically.

90.    From on or about September 6, 2016, to November 20, 2016 plaintiff Wei Li was paid a flat compensation of seven dollars and fifty cents ($7.50) per hour.

91.    At all relevant times, plaintiff Wei Li was not paid overtime pay for all the weeks that he worked over forty (40) hours in that week.

92.    Throughout his employment, plaintiff Wei Li was no compensated at least at one and one half his proposed hourly rate for all hours worked above forty (40) hours in each workweek

93.     Throughout his employment, plaintiff Wei Li was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at his promised rate.

94.     At all relevant times, plaintiff Wei Li was never informed of his hourly pay rate or any tip deductions towards the minimum wage.

95.     Further, at all relevant times, plaintiff Wei Li had to cut the cardboard and pre-pare the sauces.

96.     At all relevant times, plaintiff Wei Li's non-tipped work exceeded two (2) hours per day or more than twenty (20%) of plaintiff's workday.

97.     Additionally, defendants deducted around twenty dollars ($20) per week in meal credit, and around twenty dollars ($20) per week for transportation.

98.     This included plaintiffs service as the restaurants transportation van driver, for which plaintiff Wei Li was compensated five dollars ($5) per day for the non-tipped work.

99.     Plaintiff Wei Li meal did not include any "tea, coffee, milk, or juice" as re-quired by Section 146-3.7 of the Wage Order. Specifically, the restaurant provided hot water in a teapot, but no tea and plaintiff was not able to take any drinks from the restaurant.

100.    Furthermore, on days when plaintiff did not take his meal, did not have time to take his meal, or took his meal and was unable to finish due to him having to deliver an order, the meal deduction was still taken from plaintiffs pay.

101.    Throughout his employment, plaintiff Wei Li was not given a statement with his weekly payment reflecting employee's name, employer's name, employer's address and telephone number, employee's wages, any allowance claimed as part of the minimum wage,

and the employee's gross and net wages for each pay day in Chinese, plaintiff's native language.

102.    Plaintiff Wei Li also never received notice nor agreed to the illegal tip, transportation and meal deductions.

103.    As a part of plaintiff's employment with Defendants, plaintiff Wei Li was required to bear the costs of the purchase of a motor vehicle.

104.    As a part of Plaintiff's employment with Defendants, plaintiff Wei Li was required to bear the cost of the purchase of an electric bike and the electric batteries that come with it.

105.    In delivering food to Defendants' customers, plaintiff Wei Li drove around one hundred (100) miles per day.

106.    On average, plaintiff Wei Li drove around two (2) to three (3) miles one way per order, and delivered twenty-five (25) orders per day

107.    Plaintiff Wei Li was not reimbursed by Defendants for the cost of the delivery vehicle or the maintenance of the delivery vehicle for Defendants' benefit.

## CLASS ACTION ALLEGATIONS

108.    Plaintiffs bring their NYLL claims pursuant to Article 9 of the CPLR, on behalf of all non-exempt personnel employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

109.    All said persons, including Plaintiff, are referred to herein as the "Class."

**ASCERTAINABILITY**

110.    The number and identity of the Class member as determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each

Class member is also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under CPLR § 904.

**NUMEROSITY**

111.    The proposed class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Thought the precise number of such persons is unknown, and the facts on which the calculation of the number can be based are presently within the sole control of the Defendants, upon information and belief, there are more than forty (40) members of the class.

**COMMONALITY**

112.    Common questions of law and fact exist as to members of the Class which predominate over questions affecting only individual members of the Class, including, but not limited to, the following:

a.    Whether Defendants employed the Class members within the meaning of New York law;

b.    What are and were the policies, practices, programs, procedures, protocols, and plans of Defendants regarding the compensation of Class members;

c.    Whether Defendants failed to pay the Class members minimum wage;

d.    Whether Defendants failed to pay the Class members overtime;

e.    Whether Defendants failed to pay the Class members spread of hours;

f.    Whether Defendants failed to provide the Class members with time of hire notice;

g.    Whether Defendants failed to provide the Class members with paystubs;

h.    Whether Defendants failed to provide the Class members with adequate meal breaks; and

**TYPICALITY**

113.    Plaintiff's claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices, and procedures.

**ADEQUACY**

114.    Plaintiff is an adequate representative of the Class, will fairly protect the interest of other members of the Class, has no interests antagonistic to the members of the Class, and will vigorously pursue this suit via attorneys who are competent, skilled, and experienced in litigating matters of this type. Class counsel are competent and experienced in litigating large employment law class actions.

**SUPERIORITY**

115.    The nature of this action makes the use of the class action vehicle a particularly efficient and appropriate procedure to afford relief to Plaintiffs and the other members of the Class for the wrongs alleged herein, as follows:

    a.    This case involves a large corporate Defendant and a large number of individual Class members with many relatively small claims and common issues of law and fact;

b.  If each individual Class member were required to file an individual lawsuit, Defendants would necessarily gain an unconscionable advantage because, with their vastly superior financial and legal resources, they would be able to exploit and overwhelm the limited resources of each individual member of the Class;

c.  Requiring each individual member of the Class to pursue an individual remedy would also discourage the assertion of lawful claims by members of the Class who would be disinclined to pursue an action against Defendants who are Class members' current or former employers, because of an appreciable and justifiable fear of retaliation;

d.  The prosecution of separate actions by the individual members of the Class, even if possible, would create a substantial risk of inconsistent or varying verdicts or adjudications with respect to the individual members of the class against Defendants, would establish potentially incompatible standards of conduct for Defendants, would result in legal determinations with respect to individual members of the Class, which would, as a practical matter, be dispositive of the interest of other member members of the Class who are not parties to the adjudications, and/or would substantially impair or impede the ability of the members of the Class to protect their own interests;

e.  Furthermore, as the damages suffered by each individual members of the Class are relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action; and

f.  The costs to the court system of adjudication of such individualized litigation would be substantial.

116.  Plaintiffs intend to send notice to all members of the Class as required by Article 9 of the CPLR.

## **STATEMENT OF CLAIMS**

### COUNT I.
**Violation of N.Y. Lab. L. § 191—Failure to Pay Wages Timely Brough on Behalf of Plaintiffs and the Class**

117.  Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

118.  Section 191.1(a)(i) of the NYLL provides in relevant part that "[a] manual worker shall be paid weekly and not later than seven calendar days after the end of the week in which the wages were earned.".

119.  At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiff in full, and the similarly situated collective action members, for some or all of the hours they worked.

120.  Defendants practiced a concept of "time shaving" meaning that defendants would automatically deduct time from all the workers including plaintiffs if they did not take a break.

121.  If a worker worked a full day, then they would have forty (40) minutes of "break" automatically deducted from their hours and if a worker worked a half day then they would have twenty (20) minutes of "break" automatically deducted from their hours.

122.  As a result of the "time shaving" from defendants, plaintiff were not paid all their wages that they deserved to be owed within the time limit established by Section 191.1(a)(i)

of the NYLL.

123.    Section 198.1-a of the NYLL provides in relevant part that "[i]n any action in-
stituted in the courts upon a wage claim by an employee [] in which the employee prevails, the
court shall allow such employee to recover the full amount of any underpayment, all reasonable
attorney's fees, prejudgment interest as required under the civil practice law and rules, and,
unless the employer proves a good faith basis to believe that its underpayment of wages was in
compliance with the law, an additional amount as liquidated damages equal to one hundred
percent of the total amount of the wages found to be due."

124.    Defendant knowingly, willfully and maliciously disregarded the provision of the
NYLL by failing to plaintiffs all their wages timely.

## COUNT II.
### [Violation of New York Labor Law—Failure to Pay Minimum Wage
### Brought on behalf of Plaintiffs and Class]

125.    Plaintiffs re-allege and incorporates by reference all preceding paragraphs as
though fully set forth herein.

126.    Section 652.1, subsection (b) of the NYLL provides that "[e]very employer
shall pay to each of its employees for each hour worked a wage of not less than[] $9.00 on
and after December 31, 2015," and that "[e]very employer of eleven or more employees shall
pay to each of its employees for each hour worked in the city of New York a wage of not less
than: $11.00 per hour on and after December 31, 2016, $13.00 per hour on and after Decem-
ber 31, 2017, [and] $15.00 per hour on and after December 31, 2018."

127.    Defendants were not entitled to take a tip allowance from the minimum wage
with respect to the plaintiffs.

128.    Defendants did not furnish the plaintiffs with a written notice that they were
claiming a tip allowance pursuant to Section 195.1 of the NYLL

129.    Neither did Defendants keep and maintain substantial evidence, pursuant to Section 142-2.5 subsection (b)(1)(ii) of the Wage Order that plaintiff's tips exceeded the threshold set forth in Section 142-2.5, subsection (b)(2) of the Wage Order.

130.    Neither did defendants record plaintiffs tips as separate item in their wage records for plaintiffs.

131.    Further, plaintiffs regularly worked more than two (2) hours or more than twenty percent (20%) of their workday preforming non-tipped side jobs.

132.    Section 663.1 of the NYLL provides that "[i]f any employee is paid by his or her employer less than the wage to which he or she is entitled under the provisions of this article, he or she shall recover in a civil action the amount of any such underpayments, together with costs and reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total of such underpayments found to be due."

133.    Defendants knowingly, willfully and maliciously disregarded the provisions of the NYLL by failing to pay plaintiffs at least the minimum wage.

## COUNT III.
### [Violation of New York Labor Law—Spread of Time Pay
### Brought on behalf of Plaintiffs and Class]

134.    Plaintiffs re-allege and incorporates by reference all preceding paragraphs as though fully set forth herein.

135.    Section 659 of the NYLL authorizes the Commissioner of Labor to issue minimum wage orders, including the Wage Order.

136. Section 142-2.4 of the Wage Order provides that "[a]n employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required in this Part for any day in which: (a) the spread of hours exceeds 10 hours; or (b) there is a split shift; or (c) both situations occur."

137. Throughout their employment, plaintiffs were paid a flat compensation that did not include additional pay at the minimum wage rate for each day their spread of time exceeded ten (10) hours.

138. Section 663.1 of the NYLL provides that "[i]f any employee is paid by his or her employer less than the wage to which he or she is entitled under the provisions of this article, he or she shall recover in a civil action the amount of any such underpayments, together with costs all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total of such underpayments found to be due. Any agreement between the employee, and the employer to work for less than such wage shall be no defense to such action."

139. Defendants knowingly, willfully and maliciously disregarded the provisions of the NYLL by failing to pay plaintiffs spread of time.

## COUNT IV.
**[Violation of New York Labor Law—Failure to Provide Time of Hire Wage Notice Brought on behalf of Plaintiffs and Class]**

140. Plaintiffs re-allege and incorporates by reference all preceding paragraphs as though fully set forth herein.

141. The NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day,

week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum

wage, including tip, meal, or lodging allowances; the regular pay day designated by the em-

ployer; the name of the employer; any "doing business as" names used by the employer; the

physical address of employer's main office or principal place of business, and a mailing ad-

dress if different; the telephone number of the employer.  NYLL §195-1(a).

142.    Defendants intentionally failed to provide notice to employees in violation of

New York Labor Law § 195, which requires all employers to provide written notice in the

employee's primary language about the terms and conditions of employment related to rate of

pay, regular pay cycle and rate of overtime on their or her first day of employment.

143.    Defendants not only did not provide notice to each employee at Time of Hire,

but failed to provide notice to Plaintiff even after the fact.

144.    Due to Defendants' violations of New York Labor Law, Plaintiff is entitled to

recover from Defendants, jointly and severally, $50 for each workday that the violation oc-

curred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to

New York Labor Law. N.Y. Lab. Law §198(1-b).

## COUNT V.
### [Violation of New York Labor Law—Failure to Provide Wage Statements
### Brought on behalf of Plaintiffs and Class]

145.    Plaintiffs re-allege and incorporates by reference all preceding paragraphs as

though fully set forth herein.

146.    Section 195.3 of the NYLL provides that "[e]very employer shall furnish each

employee with a statement with every payment of wages, listing the following: the dates of

work covered by that payment of wages; name of employee; name of employer; address and

phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour,

shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if

any, claimed as part of the minimum wage; and net wages. For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked[;] and the number of overtime hours worked."

147.    Plaintiffs were not furnished a wage statement with each payment of their wages

148.    Defendants knowingly, willfully and maliciously failed to furnish plaintiffs a wage statement provided by Section 195.3 of the NYLL with each payment of wages.

## COUNT VI.
### [Violation of NYLL—Failure to Provide Meal Period Brought on Behalf of Plaintiff and the Class]

149.    Plaintiffs re-allege and incorporates by reference all preceding paragraphs as though fully set forth herein.

150.    Section 162(1) NYLL states "Every person employed in or in connection with a mercantile or other establishment or occupation coming under the provisions of this chapter shall be allowed at least thirty minutes for the noon day meal, except as in this chapter otherwise provided.   The noon day meal period is recognized as extending from eleven o'clock in the morning to two o'clock in the afternoon.   An employee who works a shift of more than six hours which extends over the noon day meal period is entitled to at least thirty minutes off within that period for the meal period."

151.    Section 162(3) NYLL states, "Every person employed for a period or shift starting before eleven o'clock in the morning and continuing later than seven o'clock in the evening shall be allowed an additional meal period of at least twenty minutes between five and seven o'clock in the evening."

152.    At all times plaintiff was employed by defendants they were not provided an adequate meal period that was uninterrupted.

153.    Although plaintiffs had "breaks" they were never fully relieved of their break but were on call meaning that if an order came their break would stop and they would have to deliver the order.

154.    Defendants knowingly, willfully and maliciously failed to provide plaintiff with a Meal Break in violation of the NYLL.

## COUNT VII.
**[Violation of NYLL—Illegal Deductions Brought on Behalf of Plaintiff and the Class]**

155.    Plaintiffs re-allege and incorporates by reference all preceding paragraphs as though fully set forth herein.

156.    Section 193 NYLL states, No employer shall make any deduction from the wages of an employee, except deductions which: (a) are made in accordance with the provisions of any law or any rule or regulation issued by any governmental agency;  or (b) are expressly authorized in writing by the employee and are for the benefit of the employee;  provided that such authorization is kept on file on the employer's premises.   Such authorized deductions shall be limited to payments for insurance premiums, pension or health and welfare benefits, contributions to charitable organizations, payments for United States bonds, payments for dues or assessments to a labor organization, and similar payments for the benefit of the employee.

157.    Defendants incorrectly deducted money from Plaintiffs if they had a "Meal Break" no matter if they fully enjoyed the meal break or not.

158.    Defendants further incorrectly deducted money from Plaintiff for transportation costs.

159.    Plaintiffs did not receive notice that defendants would be deducting meal credit from plaintiffs pay even when plaintiffs were not able to enjoy their full meal break.

160.    Defendants intentionally, maliciously and willfully disregarded the provisions of the NYLL by incorrectly deducting money from their wages without proper notice

### COUNT VIII.
**[Breach of Implied Contract for Reimbursement of all Costs and Expenses of Electric Delivery Vehicle, including Depreciation, Insurance, Maintenance and Repairs Brought on behalf of the Plaintiffs and the Class]**

161.    Plaintiffs re-allege and incorporates by reference all preceding paragraphs as though fully set forth herein.

162.    Throughout the relevant period, Defendants required their deliverymen to bear all of the "out-of-pocket" costs associated with their vehicles, including the purchase, maintenance, repair, maintenance of the delivery vehicles, including bicycles and electric bicycles.

163.    Based on his personal experience and available information, Plaintiff can document actual "out-of-pocket" vehicle related expenses of his electricity delivery bicycle.

164.    The conduct of Defendants, and the course of Defendant's conduct between the parties, evidenced an intent for Plaintiff to maintain the delivery vehicle in working condition.

165.    Plaintiffs purchased, maintained and repaired the electric bicycle at his own expense.

166.    Plaintiffs performed these deliveries for the sole benefit of the Defendants.

167.    Defendants neither explicitly nor implicitly requested Plaintiffs to cease the purchase of gasoline and/or the maintenance of the vehicle.

168.    As a result of the afore-alleged conduct of the parties, an implied contract arose between them the terms of which are that Plaintiffs would incur the expenses for bicycle

purchase and vehicle maintenance, in exchange for compensation from Defendants for such expenses.

169.    Defendants never compensated Plaintiffs for any expenses incurred from the purchase and maintenance of the electric bicycles, and the purchase of batteries. As a result, Defendants breached the implied contract by failing and refusing to pay Plaintiffs reasonable sums under the afore-alleged facts.

170.    Defendants owe Plaintiffs their overdue costs of delivery vehicles, cost of batter change, if applicable, and maintenance of the bicycle.

## **JURY DEMAND**

171.    Plaintiffs demand a trial by jury on all matters so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself, and on the behalf of the Class, respectfully requests that this Court enter a judgment providing the following relief:

a)    Certification of this case as a class action pursuant to Article 9 of the CPLR;

b)    Designation of Plaintiffs as representatives of the CPLR § 904 Class, and counsel of record as Class counsel;

c)    A declaratory judgment that the practices complained of herein are unlawful under NYLL;

d)    A permanent injunction against Defendants, its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in the violation of the NYLL and Wage Order;

e)    An award of unpaid minimum wages, unpaid overtime, and unpaid spread of hours due under NYLL and the regulations promulgated hereunder;

f)      An award of liquidated and/ or punitive damages as a result of Defendants'

willful failure to pay minimum wage, overtime, and spread of hours pursuant to NYLL;

g)      An award of costs and expenses of this action together with reasonable attor-

neys' and expert fees pursuant to NYLL §§ 198 and 663;

h)      An award to reimburse Plaintiff's document out-of-pocket delivery vehicle

costs, pursuant to the implied contract which arose between Plaintiff and Defendants;

i)      The cost and disbursements of this action;

j)      Providing that if any amounts remain unpaid upon the expiration of ninety

days following the issuance of judgment, or ninety days after expiration of the time to appeal

and no appeal is then pending, whichever is later, the total amount of judgment shall automat-

ically increase by fifteen percent, as required by NYLL § 198(4); and

k)      Such other and further legal and equitable relief as this Court deems necessary,

just, and proper.

Dated: May 30, 2023
       Flushing, New York

                                TROY LAW, PLLC
                                *Attorneys for the Plaintiff, and*
                                *potential Class*

                                /s/ John Troy_____
                                        John Troy
                                        Aaron B. Schweitzer
                                        Tiffany Troy